[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11601

Non-Argument Calendar

_____

VENENA PRESTON, et al.,

                                                    Plaintiff,

LATOYA RILEY,

                                                    Plaintiff-Appellant,

*versus*

CSX TRANSPORTATION, INC.,

                                                    Defendant-Appellee,

ROBERT GOLDEN,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-04215-MHC

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Latoya Riley filed a counseled lawsuit against her employer, CSX Transportation, Inc., alleging a claim of race discrimination under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-2, arising out of her termination in 2013.[1]  A magistrate judge issued a report and recommendation ("R&R") concluding that Riley could not establish a prima facie case of discrimination or show that CSX's stated reason for dismissing her—that she committed a major safety violation—was a pretext for discrimination.  The magistrate judge found that Riley's testimony about her proffered comparator was not admissible for lack of personal knowledge and that, even if her testimony were admissible, the comparator was not similarly

_____

[1] Riley does not address, and so has abandoned, her other claims for race and sex discrimination and retaliation.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014) (issues not raised on appeal are deemed abandoned).

situated in all material respects. Riley did not object to the R&R, despite being warned of the consequences for failing to do so, and the district court adopted the R&R and granted summary judgment to CSX. Riley now appeals.

We affirm. Our rules provide that a party's failure to make timely objections to a magistrate judge's report and recommendation, if properly warned of the consequences, as Riley was here, "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. We may still review "for plain error if necessary in the interests of justice." *Id.*

Riley cannot establish plain error. She contends that the magistrate judge erred in rejecting her testimony about the comparator as not based on personal knowledge. But even if that's true, she does not dispute the judge's alternative conclusion that, assuming her testimony were admissible, the comparator's conduct was materially different than Riley's, justifying CSX's decision to treat the matters differently. Because Riley abandons any challenge to that independent basis for the judgment, and it otherwise appears that the magistrate judge accurately perceived the record and correctly applied the law, we affirm the district court.

## I.

At the time of the relevant events, Riley, who is African American, worked for CSX as a train dispatcher. In that role, she was broadly responsible for ensuring the safe and efficient

movement of trains on CSX's operating lines.  Dispatchers "are in an extremely safety-sensitive role," entrusted with avoiding the potentially catastrophic train collisions that might occur if train movements are not planned correctly.

In 2013, CSX charged Riley with a "major" violation of its operating procedures—the most serious category of violations—for failing to enter an "EC-1" safety designation for an unattended train on a mainline track.  The EC-1 designation gives protection to individuals or trains using a particular portion of a track by preventing any other train from being directed to that location.  CSX alleged that, on July 27, 2013, Riley failed to enter an EC-1 designation for a train after it had completed a coal delivery, leaving it unprotected on a mainline track for approximately 48 hours.  In accordance with its policies, CSX held an investigative hearing on the charge in August 2013, with Atlanta Division Manager Jermaine Swafford presiding.  Chief Dispatcher J.P. Garrett testified for CSX.  After the hearing, Swafford sustained the charge and dismissed Riley.

The magistrate judge described the testimony about the incident as follows:

> [Riley's] situation involved a train that was transferred to [her] care. [She] was then supposed to place an EC-1 protection in the dispatching system, which [she] did not do. Instead, when the train crew said "this is EC-1, [number] 987720, going to release it back to you," [she] thought the crew was releasing

the EC-1 rather than releasing the now-unattended train. [She] did not understand that the crew left the now-unattended train . . . on the mainline track even though the crew also gave [her] the mileposts where the train was left.

During the investigative hearing, Garrett agreed that the train crew did not use "the proper terminology" and did not provide [Riley] with all the information they were required to provide when leaving a train unattended. But Garrett insisted that [Riley] was still guilty of violating [CSX's]'s operating procedures because she was "a qualified dispatcher on the [relevant] desk" and was "supposed to know" better. The place where the train was left was a "single track mainline," meaning the train was necessarily left blocking a mainline track because "that's the only place you can leave it." It is "the obligation of the train dispatcher to acquire [the necessary] information in the event that it is not provided."

Riley's union contested her termination by filing an arbitration claim under the collective bargaining agreement. The arbitration board agreed with CSX "that [Riley] did, in fact, release the protection of the [] coal train, leaving it unprotected on the mainline," and that because she did not follow operating rules, the train was left on the mainline unprotected for 48 hours and "[d]isastrous and tragic consequences could have but fortunately did not result."

Nevertheless, the board determined that termination was too harsh a punishment, and that she should be permitted to return to work, subject to serving an unpaid suspension for the time between her termination and eventual reinstatement.

## II.

In the magistrate judge's view, Riley could not establish a prima facie case of discrimination arising out of her termination because she lacked a proper comparator.[2]  At summary judgment, Riley relied on a comparison to Michelle Hollinhead, a white train dispatcher who, Riley claimed, was not punished for a similar incident involving an unprotected train.

The magistrate judge first found that Riley's testimony about Hollinhead was not "evidence" because Hollinhead failed to show her personal knowledge of many details.  The magistrate judge then concluded in the alternative that, even assuming Riley's testimony were admissible, Hollinhead's situation was materially different because undisputed evidence showed she did not know or have reason to know of the unprotected train, and so did not commit misconduct.  The magistrate judge explained,

---

[2] The magistrate judge also concluded that Riley could not rely on the "cat's paw" theory of liability to establish a prima facie case because Riley did not assign any discriminatory motive to Swafford, who made the termination decision based on an independent investigation.  Riley does not raise this issue on appeal, so we do not consider it.

21-11601               Opinion of the Court                    7

> In Hollinhead's case, the crew who contacted her to "release their EC-1 authority" had "cleared the mainline track." A second crew then properly requested and received EC-1 authority for that portion of the track. Unbeknownst to Hollinhead, the first crew then "came back out on the mainline track into dark territory while the second train with the proper EC-1 authority was also on the mainline track." The first crew was at fault because they "no longer had any EC-1 authority" and needed to "request another EC-1 authority before coming back out onto the mainline track."

In short, according to the magistrate judge, Hollinhead was not a valid comparator because "[Riley] engaged in misconduct and Hollinhead did not."

Finally, the magistrate judge found that, even assuming she could establish a prima facie case, Riley did not offer sufficient evidence to create a genuine triable issue regarding whether CSX's stated reason for terminating her was pretext for discrimination.

### III.

On appeal, Riley's sole argument is that the magistrate judge plainly erred in rejecting her testimony about the Hollinhead incident as not based on personal knowledge. In her view, the magistrate judge effectively rendered an impermissible credibility determination. But Riley does not challenge or address the magistrate

judge's alternative conclusion that, even assuming her testimony about Hollinhead were admissible, summary judgment was still appropriate because undisputed evidence showed that, in contrast to Riley, Hollinhead did not know or have reason to know of the unprotected train, and so did not violate CSX's rules.

When a district court bases its judgment on "multiple, independent grounds," the appellant "must convince us that every stated ground for the judgment against [her] is incorrect" to obtain reversal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). If the appellant fails to properly challenge one of the independent grounds for the judgment, she is "deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.*

Here, Riley abandoned any challenge to the district court's alternative conclusion that, even assuming her testimony about her comparator were admissible, summary judgment was still appropriate because undisputed evidence established that her comparator did not engage in the "same basic conduct (or misconduct) as the plaintiff" and so was not "similarly situated in all material respects." *Lewis v. City of Union City,* 918 F.3d 1213, 1226–27 (11th Cir. 2019) (en banc). As a result, "the judgment is due to be affirmed." *Sapuppo*, 739 F.3d at 680.

In any case, no plain error occurred because the magistrate judge appears to have accurately perceived the record and correctly applied the relevant law. In the light most favorable to Riley, the evidence shows that Riley mistakenly released an EC-1 designation

for a train, leaving it unprotected in a dangerous area, while Hollinhead did not know or have reason to know of, or have any role in causing, the unprotected train to be in her area.  Because "[a]n employer is well within its rights to accord different treatment to employees . . . who engaged in different conduct," *Lewis*, 918 F.3d at 1228, the magistrate judge properly concluded that Hollinhead was not a valid comparator for establishing either a *prima facie* case or a genuine triable issue of discrimination.

**AFFIRMED.**